ROBERT S. MELCIC, ESQ.
Nevada Bar No. 14923
3315 E. Russell Rd.
Ste. A4-271
Las Vegas, NV 89120
Phone: (702) 526-4235
Attorney's Email: robertmelcic@gmail.com
Clerk's Email: rsmlawclerk@gmail.com
*Attorney for Jason Sadora*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JASON SADORA,

                Plaintiff,

vs.

FIELDING GRADUATE UNIVERSITY, a
business; DANIELLE MOREGGI, Clinical and
Training Director for the Psychology Institute
of Las Vegas, in her individual and official
capacities; WENDI WILLIAMS, Provost at
Fielding, in her individual and official
capacities; CONNIE VEAZEY, Program
Director, Clinical Psychology Department at
Fielding, in her individual and official
capacities; DOE INDIVIDUALS 4 through 50,
inclusive, in their individual and official
capacities; and DOE BUSINESS ENTITIES, 2
through 10, inclusive.

                Defendants.

Case No.: 2:24-cv-1240
Dept. No.:

## COMPLAINT

COMES NOW, Complainant JASON SADORA, by and through his counsel, ROBERT
S. MELCIC, ESQ. of THE LAW OFFICE OF ROBERT S. MELCIC, and complains against
FIELDING GRADUATE UNIVERSITY, a business; DANIELLE MOREGGI, Clinical and
Training Director for the Psychology Institute of Las Vegas, in her individual and official
capacities; WENDI WILLIAMS, Provost at Fielding, in her individual and official capacities;

CONNIE VEAZEY, Program Director, Clinical Psychology at Fielding in her individual and official capacities; DOE INDIVIDUALS 4 through 50, inclusive, in their individual and official capacities; and DOE BUSINESS ENTITITIES, 2 through 10, inclusive.

## I. STATEMENT OF THE CASE

This case arises from the failure to accommodate under the Americans with Disabilities Act. PLAINTIFF JASON SADORA was a graduate student then enrolled in a Clinical Psychology Ph.D. program at a graduate university, FIELDING GRADUATE UNIVERSITY, that operates largely remotely around the country, and was also simultaneously enrolled in a practicum setting for school credit at the Psychology Institute of Las Vegas under DANIELLE MOREGGI, Clinical and Training Director for the Psychology Institute of Las Vegas.

PLAINTIFF JASON SADORA, a Licensed Practical Counselor (LPC), had been studying at FIELDING in order to obtain a Doctor of Psychology (Ph.D.) degree. FIELDING's Psychology Department director CONNIE VEAZEY, and other faculty under her direct supervision, and DANIELLE MOREGGI in her capacity as SADORA's practicum supervisor, repeatedly identified to SADORA that they believed he suffers from Attention Deficit Disorder (ADD).

These same individuals—all degreed experts in the field of psychology—also identified to SADORA that they believed his disability was negatively impacting his ability to complete their coursework and his practicum. VEAZEY, MOREGGI, and others actually diagnosed SADORA, thus blurring the lines between their roles as professors/internship supervisors and clinicians.

This blurring was a breach of medical ethics on the parts of VEAZEY, MOREGGI, and others. SADORA was their student, not their patient. The aforementioned DEFENDANTS also forced SADORA into psychotherapy as a condition of finishing his degree, but determined that the therapy had not worked without ever consulting his therapist.

Crucially, no one from the practicum or the University, including MOREGGI, VEAZEY,

and WILLIAMS, ever referred SADORA to FIELDING's Disability Resource Center (DRC) if, in fact, the university even actually operates one. Thus, SADORA was never formally and properly accommodated by FIELDING's DRC as is the requirement under federal law once SADORA's professors/internship supervisors could see that his disability was impairing his coursework and that he needed reasonable accommodation.

SADORA was never reasonably accommodated under the ADA. Instead, these trained psychology experts ultimately advised Provost WENDI WILLIAMS that she expel SADORA from FIELDING's Clinical Psychology Program based on an exit interview report and what they called his "history of problematic behaviors."

This means that SADORA was expelled from FIELDING's Psychology Department on account of his disability without ever having been evaluated by or accommodated by FIELDING's DRC, a direct violation of the ADA. SADORA's disabilities were brought to the attention of FIELDING's administration before his expulsion was finalized. Nevertheless, WILLIAMS upheld SADORA's expulsion.

While FEILDING GRADUATE UNIVERSITY's principal place of business is domiciled in Santa Barbara, California, students at FIELDING complete their degrees all around the country with supervisors who report the student's progress back to the home base. It is therefore possible at FIELDING to be evaluated by a professor who has never actually met the student in person. For instance, CONNIE VEAZEY was located in Texas at the time when she was diagnosing SADORA in Nevada and WENDI WILLIAMS was in California at the time when she expelled him in Nevada. MOREGGI is located in Las Vegas.

Concerningly, FIELDING also encourages its students to engage in copyright violation as a condition of completing their degrees, as by encouraging them to mail diagnostic testing materials all around the country for use by other students in different states instead of purchasing a testing material license for each state. Here, a dispute about SADORA's administration of the Wechsler Adult Intelligence Scale was a factor in his expulsion. But he only received the mailed testing materials very soon to when he had to administer them.

SADORA completed the majority of his coursework in Southern Nevada at the time when he was expelled. Faculty for FIELDING GRADUATE UNIVERSITY never indicated to SADORA that they had a functioning DRC ready to evaluate and accommodate him in the state of Nevada. On information and belief, the UNIVERSITY's only DRC, if it existed, was located in Santa Barbara, California, approximately 359 miles away from where SADORA was earning his graduate credits. Also, on information and belief, the UNIVERSITY employs no real DRC staff independently trained in evaluating disability and in setting up student accommodation plans under the ADA. Rather, FIELDING simply employs the same woman who already functions as a general academic advisor to run what FIELDING UNIVERSITY calls its DRC.

Problems for SADORA increased at the practicum he attended at the Psychology Institute of Las Vegas (hereinafter, "PILV") under DANIELLE MOREGGI in the summer of 2022. Like FIELDING, MOREGGI diagnosed SADORA during his internship by stating that she believes he suffers from ADD and that this was impairing his ability to complete the practicum successfully.

But MOREGGI never referred SADORA to FIELDING's DRC for help after diagnosing him—if, in fact, the UNIVERSITTY even has one. Following a dispute at the practicum regarding implementation of a treatment modality that PILV advertises on its own website as being one of its specialties, MOREGGI fired SADORA from her practicum. This firing, along with other academic problems at FIELDING that SADORA believed in good faith had already been resolved, were then used by FILEDING as the justification to expel him.

SADORA's expulsion occurred after multiple psychology experts had: (1.) Identified SADORA as being disabled; (2) Diagnosed SADORA as if he were their patient, not their student, an ethical breach of their role as both professors and clinicians; and (3.) Failed utterly to refer SADORA to FIELDING UNIVERSITY's DRC, if one existed, for proper, formal accommodations by third-party evaluators. Instead, MOREGGI, VEAZEY, and her subordinates allowed their ad hoc diagnoses of SADORA in class and during a practicum to take the place of proper accommodation.

## II.

### JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, and the PLAINTIFF and one defendant, DANIELLE MOREGGI, are both resident citizens of Nevada.

   a. General jurisdiction is proper because DEFENDANTS FIELDING UNIVERISTY, DANIELLE MOREGGI, WENDI WILLIAMS, and CONNIE VEAZEY expressly and impliedly consented to doing business with their graduate students in the state of Nevada;

   b. General jurisdiction is proper because DEFENDANTS FIELDING UNIVERISTY, DANIELLE MOREGGI, WENDI WILLIAMS, and CONNIE VEAZEY had continuous and systematic contacts within the state of Nevada in order to complete work with their graduate students in the state of Nevada;

   c. Specific jurisdiction is proper because DEFENDANTS FIELDING UNIVERISTY, DANIELLE MOREGGI, WENDI WILLIAMS, and CONNIE VEAZEY purposely availed themselves of the benefits and protections of the State of Nevada when doing business with their graduate students in the state of Nevada.

3. Venue is proper in this Court because:

   a. A substantial part of the events or omissions giving rise to this claim occurred in Las Vegas, Nevada;

   b. The parties exercised business authority and/or resided in Las Vegas, Nevada, where a substantial part of the events or omissions giving rise to the claims of this case occurred.

//

### III. PARTIES

1. At all times relevant to this action, Defendant FIELDING GRADUATE UNIVERSITY was, and is, a graduate university doing business in the State of Nevada, County of Clark.

2. At all times relevant to this action, Defendant DANIELLE MOREGGI was, and is, a licensed clinical psychologist doing business in the State of Nevada, County of Clark.

3. At all times relevant to this action, Defendant WENDI WILLIAMS, the Provost of FIELDING GRADUATE UNIVERSITY, was, and is, a resident of the State of California, on information and belief, County of Santa Barbara.

4. At all times relevant to this action, Defendant CONNIE VEAZEY, the Clinical Director of the Psychology Department for FIELDING GRADUATE UNIVERSITY, was, and is, a resident of the State of Texas, Fort Bend County.

5. On information and belief, the true names, capacities, and specific involvement of the DEFENDANTS sued herein as DOE BUSINESS ENTITIES 2 through 10, inclusive, and DOE INDIVIDUALS 4 through 50, inclusive, are unknown to PLAINTIFF, who sues these DOE DEFENDANTS by such fictitious names; PLAINTIFF alleges that each of the Defendants sued herein as DOEs performed acts and are responsible in some manner for the events and injuries alleged herein.

6. PLAINTIFF alleges that DOE BUSINESS ENTITIES 2 through 10, inclusive, and DOE INDIVIDUALS 4 through 50, inclusive, are, and at all times relevant hereto were, residents of the state of Nevada, or had a presence in Nevada, or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes; PLAINTIFF will seek leave of Court to amend this *Complaint* to state the true names, capacities, and specific involvement of such Defendants when they have been ascertained.

7. PLAINTIFF is informed and believes, and therefore alleges, that each of the Defendants sued herein, including the DOE DEFENDANTS, was the agent, employee, servant, or corporate employer of the other and was acting within the scope and purpose of such an agency, employment, service, or corporate activity, and that each of the DOE DEFENDANTS sued

herein is negligently, contractually, intentionally, recklessly, strictly, or otherwise responsible in some manner for the events and happenings alleged herein, and proximately caused the injuries alleged herein.

## IV. GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

8. PLAINTIFF holds dual Masters degrees in Kinesiology and Counseling and is licensed to work as a Licensed Professional Counselor (LPC); his GPAs during his prior graduate degrees were approximately in the 3.6 range or higher.

9. PLAINTIFF also served in the Army National Guard from March 2006 to June 2023 when he was honorably discharged.

10. PLAINTIFF was a graduate student of FIELDING GRADUATE UNIVERSITY from Fall 2020 to his expulsion in August 18, 2023.

11. When PLAINTIFF matriculated at FIELDING, they had just recovered their accreditation from the American Psychological Association, having lost it, on information and belief, for failure to meet national academic standards.

12. The Ph.D. program in which PLAINTIFF was enrolled was supposed to last five years.

13. The Ph.D. program in which PLAINTIFF was enrolled was a remote program that allowed PLAINTIFF to study from anywhere in the country.

14. PLAINTIFF therefore completed some of his coursework when he lived in Oregon and the rest when he moved back to Las Vegas, Nevada, where he moved because there were more practicum opportunities.

15. The unusual structure of FIELDING's Ph.D. program meant that professors could sign off on PLAINTIFF's work from other locations around the country even if they had never met PLAINTFF in person.

16. At the time of his expulsion, PLAINTIFF had already completed 100 of 180 credits, had already completed the majority of coursework, still needed to complete 1,500 hours of practicum, had already invested approximately $100,000 of student loans into the Ph.D.

program at FIELDING, and had invested approximately $45,000 of personal money into the Ph.D. program at FIELDING.

17. PLAINTIFF's investment of personal money included relocation costs to move to Las Vegas to attend a practicum, books, supplies, and living expenses.

18. PLAINTIFF experienced significant marital problems with his wife of eight years starting in January 2021 and continuing through his divorce in August 2022; at this time, his disabilities that had largely not troubled him since middle school, resurfaced.

19. Prior to middle school, PLAINTIFF was given an Individualized Education Plan (IEP) from pre-K to 5th grade due to disability.

20. PLAINTIFF was able to complete the remainder of middle school and high school without an IEP.

21. On December 21, 2021, PLAINTIFF moved from Oregon to Las Vegas for better opportunities to secure a practicum as part of his degree program.

22. Thus, by January 2022, PLAINTFF had to rush to get started in a practicum.

23. On February 3, 2022, PLAINTIFF submitted a homework assignment: the administration of a neuropsychological test: the Weschler Adult Intelligence Scale or WAIS.

24. On March 1, 2022, PLAINTIFF wanted to work and was offered a practicum placement in Phoenix, Arizona at the Veteran's Administration.

25. PLAINTIFF repeatedly identified to his superiors at FIELDING that he wanted to specialize in working with military veterans.

26. On April 4, 2022, PLAINTIFF was told by Dr. Griffith, a professor working under VEAZEY, that there was a formal problem with PLAINTIFF's WAIS administration from February 2022.

27. Thus, FIELDING had waited 60 days to inform PLAINTIFF that anything was wrong with his WAIS administration.

28. Prior to this, on March 23, 2022, Dr. Griffith had e-mailed FIELDING faculty including VEAZEY that he anticipated a problem with SADORA's work. **Exhibit 1**.

29. Dr. Griffith's delay violated FIELDING's own stated policies, entitled the "Faculty and Staff Timely Response Policy." **Exhibit 2**.

30. The Faculty and Staff Timely Response Policy states that, "The faculty member is responsible for providing written feedback on the assessment material within 30 calendar days of receipt of those materials by the faculty member (or by the date mutually agreed to by the faculty member and student.)" ***Id.* at 2**.

31. The Faculty and Staff Timely Response Policy states that exceptions are possible, stating, "Faculty can experience an unexpected or extraordinary circumstance that makes adherence to the policy impossible at a particular time." **Exhibit 2 at 3**.

32. However, in that case, "The faculty member is responsible for notifying affected students and their programs' Governance Committee that handles personnel matters"—something that Griffith did not do. ***Id.***

33. In PLAINTIFF's own case, the Faculty and Staff Timely Response Policy was never adhered to.

34. Thus, only by the end of April 2022 did PLAINTIFF know that he needed to repeat the WAIS; due to this, he could not go to Arizona to complete his desired practicum at the VA.

35. On April 19, 2022, PLAINTIFF promptly readministered the WAIS according to Dr. Griffith's instructions.

36. On April 22, 2022, PLAINTIFF was accused by another professor working under VEAZEY, Ibolya Szuromi, of plagiarism, specifically, of using too much of a psychology treatise's own language when summarizing what the treatise said in a homework assignment.

37. On April 22, 2022, VEAZEY stated in writing, "Dr. Szuromi decided to consider your plagiarism a matter that can be resolved informally." **Exhibit 3 at 2**.

38. Later, in a writing dated September 19, 2022 regarding PLAINTIFF's suspension, VEAZEY again confirmed this, writing, "It was decided to have an informal resolution of the complaint. Jason complied with the informal resolution, and he recently finished the course and received a B+ in the course." **Exhibit 8 at 4**.

39.  On April 26, 2022, PLAINTIFF was told by Dr. Griffith that his WAIS administration was now sufficient to pass.

40.  Therefore, based on all these assurances, PLAINTIFF reasonably believed both the plagiarism matter and the WAIS administration matter to be concluded.

41.  On May 6, 2022, PLAINTIFF was advised by Drs. Read and Hanson to "step back" from his plans to attend practicum in Arizona.

42.  On May 23, 2022, PLAINTIFF received formal approval to attend practicum in Las Vegas at the Psychological Institute of Las Vegas (hereinafter, "PILV") under supervisor DANIELLE MOREGGI.

43.  On June 1, 2022, PLAINTIFF and MOREGGI discussed providing Eye Movement Desensitization and Reprocessing therapy to patients, hereinafter "EMDR."

44.  EMDR is a treatment modality common for use among military veterans who suffer from post-traumatic stress disorder (PTSD).

45.  PILV advertises on its website that it specializes in providing patients with EMDR. **Exhibit 4.**

46.  On June 1, 2022, MOREGGI advised PLAINTIFF to refrain from providing this treatment modality, and PLAINTIFF refrained.

47.  Also on June 1, 2022, other therapists at PILV explained to PLAINTIFF that MOREGGI was hesitant to allow the use of EMDR because a previous intern had administered the treatment modality improperly, without the appropriate steps.

48.  On June 15, 2022, PLAINTIFF asked MOREGGI about needing three weekly supervision hours to satisfy the requirements of his practicum; at this time, MOREGGI stated to PLAINTIFF that she only needed to provide him with one hour of supervision per week, and he could obtain supervision from other professionals at the practicum site for the other hours.

49.  PLAINTIFF's Practicum Training Contract states that his weekly supervision hours with a licensed doctoral-level psychologist will be 2 hours, and that this supervision must be at least 8% of his total weekly clinical practicum hours.  **Exhibit 5 at 3.**

50. This paperwork also lists MOREGGI as PLAINTIFF's "primary supervisor." **Exhibit 5 at 2**.

51. PLAINTIFF's Practicum Affiliation Agreement states that, "a minimum of 12% of the total practicum hours shall be in supervision." **Exhibit 6 at 2**.

52. There were several weeks at practicum where PLAINTIFF was not supervised for that week.

53. There were other weeks where MOREGGI simply reviewed a clinical note involving the PLAINTIFF and stated in e-mail that this counted as direct supervision.

54. For instance, on June 8, 2023, MOREGGI reviewed one of PLAINTIFF's intakes and stated that this review counted towards *all* of PLAINTIFF's supervision hours for that week.

55. On June 22, 2022, MOREGGI reevaluated PLAINTIFF regarding whether he could use EMDR at her practicum site.

56. MOREGGI stated to Plaintiff at this time that he could practice EMDR if he staffed it with her or with another EMDR therapist at the practicum.

57. The implied understanding here between both parties was that PLAINTIFF would only implement Steps 1 & 2 of EMDR.

58. In practice, PLAINTIFF ended up using mindfulness strategies and an EMDR technique called "resourcing" without actually practicing Steps 1 & 2 of EMDR.

59. On June 29, 2022, MOREGGI stated to PLAINTIFF that she would be out of the office the following week and would have a fellow psychologist supervise PLAINTIFF.

60. By July 8, 2022, this other psychologist, Dr. Irina Abramians, had still never consulted with PLAINTIFF regarding supervision.

61. Dr. Abramians also stated to PLAINTIFF that MOREGGI had never mentioned to her the need to supervise PLAINTIFF.

62. On July 20, 2022, PLAINTIFF had supervision with MOREGGI, who stated at this time that PLAINTIFF was doing well at the practicum, that he was "averaging 3s" on a scale of 1-5, and that he had "nothing to worry about" regarding her evaluation of him.

63.  During the evaluation session of PLAINTIFF on July 20, 2022, MOREGGI and PLAINTIFF again discussed the specifics of his implementation of EMDR.

64.  At this time, MOREGGI stated to PLAINTIFF that she did not have any concerns about him practicing Steps 1 and 2 of this treatment modality.

65.  Also, during the evaluation session of PLAINTIFF on July 20, 2022, MOREGGI asked PLAINTIFF what therapist at PILV he was consulting with regarding his provision of EMDR.

66.  Then, MOREGGI told PLAINTIFF not to consult with that other therapist, named Nathaniel Minetto, LCPC.

67.  At the end of the evaluation session of PLAINTIFF on July 20, 2022, PLAINTIFF mentioned to MOREGGI his concerns that only his license was being listed on all of the clinical paperwork, not hers.

68.  As supervisor, MOREGGI's own license should have appeared on the clinical paperwork.

69.  On July 20, 2022, MOREGGI stated to PLAINTIFF that she would "take care of it."

70.  On July 26, 2022 at 10:06 AM, MOREGGI texted PLAINTIFF seeking his reply to her e-mail; in this e-mail, MOREGGI asked PLAINTIFF if he had practiced EMDR while she was away.

71.  On July 29, 2022, during an in-person meeting, MOREGGI told PLAINTIFF that he needed to meet with her before going to other therapists regarding EMDR, a contradiction of her prior statement to him on June 22, 2022, when MOREGGI had stated that PLAINTIFF could use EMDR at her practicum site provided that he staffed it with another EMDR therapist.

72.  SADORA obeyed MOREGGI's new and contradictory instructions.

73.  At the in-person meeting on July 29, 2022, PLAINTIFF asked why he had not been provided with a supervisor the week before, to which MOREGGI replied that he did not need to have weekly supervision, a statement that violated PLAINTIFF's contracts for the practicum. **Exhibits 5 and 6**.

74.  Amid this, PLAINTIFF e-mailed MOREGGI and PLAINTIFF's other supervisors at PILV

a questionnaire that PLAINTIFF's military mentor requested be completed by PLAINTIFF's employer prior to PLAINTIFF's involvement in a military leadership program taking place outside the practicum.

75.  In his e-mail, PLAINTIFF indicated that completing the questionnaire was appreciated for his professional development but was entirely voluntary.

76.  PLAINTIFF is the chair of a military chapter of the American Psychological Association.

77.  On July 28, 2022, MOREGGI e-mailed PLAINTIFF about the questionnaire, indicating that his request of other therapists that it be completed was "concerning" and indicating that PLAINTIFF should not talk to other therapists at the practicum for help. **Exhibit 7**.

78.  On July 29, 2022, MOREGGI terminated PLAINTIFF from the practicum at PILV, and invited PLAINTIFF to join her the next day at the practicum site to "process everything."

79.  During this meeting on July 30, 2022, MOREGGI indicated to PLAINTIFF that she would tell FIELDING that the EMDR interventions PLAINTIFF was using "were not aligned with her practice."

80.  During this meeting on July 30, 2022, PLAINTIFF asked Dr. Moreggi about staying at PILV to conduct neuropsychological testing; she replied that she needed a "clean break, otherwise, people would have certain perspectives on why [PLAINTIFF] was still there."

81.  On August 8, 2022, PLAINTIFF sent a detailed timeline to his supervisors at FIELDING in order to address the totality of the circumstances dating back to December 21, 2021, when PLAINTIFF had moved to Las Vegas to attend practicum; VEAZEY was one of the four recipients of this e-mail.

82.  On August 18, 2022, PLAINTIFF spoke with VEAZEY, Dr. Read, Dr. Hanson, and Dr. Lassen regarding the circumstances at his practicum in a committee hearing where PLAINTIFF was compelled to attend alone, without representation, according to the stated policies of FIELDING.

83.  On September 19, 2022, PLAINTIFF was referred to FIELDING's "Problems in Professional Competence" Program (hereinafter, "the PPC Program"). **Exhibit 8**.

84. In this referral, VEAZEY criticizes several of PLAINTIFF's perceived "inabilit[ies]," including PLAINTIFF's disability. **Exhibit 8 at 2**.

85. Specifically, VEAZEY writes that PLAINTIFF demonstrates, "an inability to control personal stress, psychological problems, and/or excessive emotional reactions which interfere with professional functioning." ***Id***.

86. In her referral, VEAZEY goes on to write that "The problematic behavior has had or has the potential for ethical or legal ramifications if not addressed." ***Id.***

87. But, despite the purported seriousness, VEAZEY never referred PLAINTIFF to FIELDING's Disability Resource Center, if the University has one, for reasonable accommodations.

88. Concerningly, the timeline that VEAZEY attaches to her referral of PLAINTIFF to the PPC Program brings up both the WAIS administration and the plagiarism allegation from prior to the practicum at PILV. **Exhibit 8 at 4.**

89. Thus, VEAZEY uses both of these incidents as justification for referring PLAINTIFF to the PPC Program, even though, by the end of April 2022, PLAINTIFF reasonably believed based on assurances that both of those matters had already been successfully resolved.

90. PLAINTIFF reasonably believed both of those matters to be successfully resolved because: (1.) Dr. Griffith had told PLAINTIFF that his second WAIS administration was now sufficient to pass; and (2.) Dr. Szuromi ultimately awarded PLAINTIFF a B+ in the course where PLAINTIFF had been accused of copying from the book.

91. But by September 2022, now, those problems resurfaced again as justification for PLAINITFF's referral to the PPC program, and VEAZEY's writing regarding the referral attaches anew as "References" all the prior e-mails regarding this coursework that had allegedly already been resolved. **Exhibit 8**.

92. On November 23, 2022, under the PPC Program, PLAINTIFF was placed on a two-semester suspension by VEAZEY, with a re-entry interview of PLAINTIFF to take place on June 29, 2023.

93.  Thus, the PPC Program is effectively an academic suspension with the possibility that the student may be permanently expelled following completion of the PPC period.

94.  In her November 23, 2022 letter to PLAINTIFF regarding the findings of the PPC committee, VEAZEY explicitly states to PLAINTIFF that he needs to undergo psychotherapy as a condition of completing his graduate coursework; there, VEAZEY writes:

> It is recommended that you use the time during suspension to engage in personal psychotherapy aimed at increasing self-awareness, personal responsibility, and behavior change necessary for adequate professional performance.

**Exhibit 9 at 2.**

95.  This means that, on November 23, 2022, VEAZEY acknowledged in writing that PLAINTIFF has a disability.

96.  If VEAZEY acknowledged in writing that PLAINTIFF has a disability, then VEAZEY should have referred PLAINTIFF to FIELDING's Disability Resource Center, if the University has one, so that his disability could be properly accommodated prior to PLAINTIFF completing more academic coursework at FIELDING.

97.  Further, the decision for whether to suspend PLAINTIFF should have been undertaken only after he had been properly accommodated, which he never was.

98.  Instead VEAZEY diagnosed PLAINTIFF in writing without making any referral.

99.  But VEAZEY was PLAINTIFF's professor, not his doctor in a clinical setting.

100.   If VEAZEY recognized that PLAINTIFF needed help for his disability, her proper course of action under the ADA should have been to refer PLAINTIFF to FIELDING's Disability Resource Center, if the University has one, not to diagnose him.

101.   Despite her failure to refer, VEAZEY nevertheless acted on her diagnosis of PLAINTIFF and her bias regarding PLAINTIFF's disabilities to suspend him from the academic program at FIELDING.

102.   Thus, PLAINTIFF was placed on a program of academic probation on account of his

disability even though he was never offered any formal accommodations for that disability.

103.    PLAINTIFF's "re-entry" interview was conducted with Drs. Elaine Hanson and April Harris-Britt on or around June 29, 2023.

104.    Dr. April Harris-Britt is African American.

105.    On or around November 10, 2021, PLAINTIFF had previously reached out to Dr. Harris-Britt regarding a personal matter involving his difficulties in his marriage to his ex-wife, who is African American; these difficulties included racial hostility directed at PLAINTIFF by his wife following the national events of the Black Lives Matter movement.

106.    For that reason, Harris-Britt should not have been one of PLAINTIFF's evaluators to decide whether he should be permanently expelled from FIELDING as Harris-Britt already had negative and very personal information about PLAINTIFF that could cause her to have bias against him.

107.    During PLAINTIFF's "re-entry" interview, Dr. Harris-Britt can be seen eating.

108.    On September 15, 2023, Provost WILLIAMS made the decision to uphold FIELDING's expulsion of PLAINTIFF without further appeal.


## —STATE CLAIMS—

## V.

## FIRST CLAIM FOR RELIEF

### *Breach of Contract*

**(Asserted against DEFENDANTS FIELDING GRADUATE UNIVERSITY, DANIELLE MOREGGI, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)**

109.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

110.    A contract existed between SADORA and FIELDING GRADUATE UNIVERSITY.

111.    PLAINTIFF also had a signed "Practicum Training Contract" between himself and MOREGGI. **Exhibit 5 at 7.**

112.    Evidence for these contracts exists but is not limited to: FIELDING's offer of admission, PLAINTIFF's repeated payments for tuition, ongoing e-mail communication between PLAINTIFF, VEAZEY, MOREGGI, and others, and signed writings binding all parties.

113.    The contract between PLAINTIFF and FIELDING for the degree as a whole is binding, fully integrated, and enforceable, giving rise to statutory, regulatory, and common law duties.

114.    The contract between PLAINTIFF and FIELDING for his field supervision by MOREGGI is binding, fully integrated, and enforceable, giving rise to statutory, regulatory, and common law duties.

115.    At all relevant times herein, these binding and enforceable promises made by DEFENDANTS to PLAINTIFF included those arising from DEFENDANTS' policies, agreements, promises, contracts, service behavior, customs, usages, patterns, and practices and state and federal law to which DEFENDANTS are subject.

116.    There are four elements to a claim for breach of contract in Nevada: "(1) formation of a valid contract; (2) performance or excuse of performance by plaintiff; (3) material breach by the defendant; and (4) damages." *Padilla Constr. Co. of Nev. v. Big-D Constr. Corp.*, 386 P.3d 982 (Nev. 2016).

117.    A valid contract both for a degree and for a practicum existed between DEFENDANTS and PLAINTIFF, so element one from *Padilla* is met.

118.    PLAINTIFF, VEAZEY, and MOREGGI routinely performed under the contracts they had with PLAINTIFF, so element two from *Padilla* is met.

119.    DEFENDANTS FIELDING, VEAZEY, AND WILLIAMS breached their contractual duties to PLAINTIFF in multiple ways, including when they failed to refer PLAINTIFF for reasonable accommodations so that he could succeed in their degree program, so element three from *Padilla* has been met.

120.    DEFENDANT MOREGGI breached her contractual duties to PLAINTIFF in multiple ways, including when she failed to refer PLAINTIFF for reasonable accommodations so that he could succeed in her practicum, and when she failed to supervise him adequately, and

when she failed to place her own license on the clinical paperwork, so element three from *Padilla* has been met.

121.    As a direct and proximate result of DEFENDANTS' breach of obligations, enforceable promises, contract, and statutory regulations, including:

    a.  By wrongfully expelling PLAINTIFF from the entire program on the basis of academic problems caused by disability without referring him for reasonable accommodations; and

    b.  By retaining tuition monies paid to them while simultaneously setting up PLAINTIFF to fail in their for-profit degree program; and

    c.  By failing to inspect whether MOREGGI's treatment of PLAINTIFF at the practicum had been ethical and legally compliant; and

    d.  By wrongfully terminating PLAINTIFF from the practicum on the basis of academic problems caused by disability without referring him for reasonable accommodations;

PLAINTIFF has sustained damages in an amount to be proven at trial, thereby fulfilling the final element from *Padilla* as regards the conduct of ALL DEFENDANTS.

122.    As a direct and proximate result of DEFENDANTS' breach, PLAINTIFF has had to retain the services of an attorney in this matter, and he therefore seeks reimbursement for reasonable attorneys' fees and costs.

## VI.

## SECOND CLAIM FOR RELIEF

### *Intentional Interference with Contractual Relations*

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

123.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

124.    In Nevada, in an action for intentional interference with contractual relations, a plaintiff

must establish:

> (1) a valid and existing contract;
>
> (2) the defendant's knowledge of the contract;
>
> (3) intentional acts intended or designed to disrupt the contractual relationship;
>
> (4) actual disruption of the contract; and
>
> (5) resulting damage.

*J.J. Industries, LLC v. Bennett*, 119 Nev. 269, 274 (Nev. 2003).

125.    Here, there are at least two valid and enforceable existing contracts, that between PLAINTIFF and FIELDING for the entire degree and that between PLAINTIFF, FIELDING, and MOREGGI for the practicum, so element one from *J.J. Industries* has been met.

126.    Second, FIELDING GRADUATE UNIVERSITY knew of both contracts: PLAINTIFF was one of the UNIVERSITY's admitted students, and his practicum had been approved by the UNIVERSITY, so element two from *J.J. Industries* is met.

127.    Third, DEFENDANTS VEAZEY, WILLIAMS, and MOREGGI engaged in intentional acts designed to disrupt the contractual relationship between PLAINTIFF and FIELDING:

> a.  For her part, VEAZEY disrupted the contractual relationship between PLAINTIFF and FIELDING by recommending PLAINTIFF for suspension for reasons that she simultaneously acknowledged in writing were due to disability— but that she never helped her student obtain accommodations for;
>
> b.  For her part, WILLIAMS disrupted the contractual relationship between PLAINTIFF and FIELDING by sustaining PLAINTIFF's expulsion even though PLAINTIFF had never been properly accommodated for the disabilities that his program director had identified in writing;
>
> c.  For her part, MOREGGI disrupted the contractual relationship between PLAINTIFF and FIELDING by, *inter alia*:

    i.    Disparaging PLAINTIFF to FIELDING for doing something that he never did, namely, practice EMDR without approval and supervision;

    ii.    Failing to supervise PLAINTIFF for the amount of time required of her under the practicum agreements;

    iii.    Recommending that PLAINTIFF be failed from his practicum after she had assured him that he had "nothing to worry about."

    d.    This list is not exhaustive but is sufficient to establish that element three from *J.J. Industries* has been met.

128.    PLAINTIFF's two contracts with FIELDING were actually disrupted in that he was failed from his practicum and from the program as a whole, so element four from *J.J. Industries* is met.

129.    As a direct and proximate result of DEFENDANTS' breach of obligations, enforceable promises, contract, and statutory regulations, including by:

    a.    Wrongfully terminating PLAINTIFF from his practicum without accommodating him under the ADA; and

    b.    Wrongfully terminating PLAINTIFF from his program without accommodating him under the ADA,

PLAINTIFF has sustained damages in an amount to be proven at trial, thus fulfilling the final element from *J.J. Industries*.

130.    As a direct and proximate result of DEFENDANTS' breach, PLAINTIFF has had to retain the services of an attorney in this matter, and he therefore seeks reimbursement for reasonable attorneys' fees and costs.

//

//

//

//

//

# VII.

## THIRD CLAIM FOR RELIEF

### *Breach of the Covenant of Good Faith and Fair Dealing*

**(Asserted against DEFENDANTS FIELDING GRADUATE UNIVERSITY, DANIELLE MOREGGI, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)**

131.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

132.    In Nevada, it is "well established" that:

> "[E]very contract imposes upon the contracting parties the duty of good faith and fair dealing." A breach of this duty occurs "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith."

*Sands Aviation, LLC v. AIS-Int'l, Ltd.*, No. 73522, at *6 (Nev. Mar. 28, 2019) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993) (*Hilton II*)).

133.    DEFENDANTS FIELDING GRADUATE UNIVERSITY, VEAZEY, and WILLIAMS did not negotiate for their contracts with PLAINTIFF or perform in good faith because they had no intention to reasonably accommodate him and no ability to reasonably accommodate him at the time of contracting.

134.    DEFENDANT MOREGGI did not negotiate for PLAINTIFF's practicum contract in good faith because she had no intention to supervise PLAINTIFF for the amount of time required under the contract, she had no intention to reasonably accommodate him, and she had no ability to reasonably accommodate him at the time of contracting.

135.    All DEFENDANTS at all points in time bore the upper hand in these transactions as PLAINTIFF was merely a graduate student and thus subordinate to DEFENDANTS' drafting and performance.

136.   PLAINTIFF risked being terminated from his program completely if he complained too much about not being sufficiently accommodated.

137.   PLAINTIFF was terminated from his practicum after he raised at least two material problems with his practicum at PILV: 1.) That his supervision by MOREGGI had been insufficient; and 2.) that it was legally wrong for his license and not hers to appear on the clinical paperwork.

138.   DEFENDANTS' FIELDING, VEAZEY, and WILLIAMS' abject unwillingness to countenance PLAINTIFF's allegations of unfairness regarding his practicum once he had leveraged them demonstrates that these DEFENDANTS also acted in bad faith because they had no intention to investigate whether PLAINTIFF's claims about the practicum were true.

139.   With their negligence and intentional wrongs, DEFENDANTS behaved in a manner unfaithful to the purpose of the contracts they had with PLAINTIFF.

140.   With their negligence and intentional wrongs, DEFENDANTS frustrated PLAINTIFF's justified expectations that the contracts would be followed.

141.   As a graduate student, PLAINTIFF had a reasonable expectation that he would be dealt with honestly, fairly, and in good faith as he agreed to perform his end of the contract: working diligently at his studies and the practicum.

142.   DEFENDANTS acted in bad faith when they chose, capriciously and without reason, to terminate PLAINTIFF from their program when they knew he had disabilities that they had failed to reasonably accommodate.

143.   DEFENDANTS breached their covenant of good faith and fair dealing to PLAINTIFF, and tortiously so, by terminating him for being disabled.

144.   DEFENDANTS acted under a bad faith pretext and in a manner that was unfaithful to PLAINTIFF's reasonable expectation that he would be treated equitably, fairly, and with dignity regardless of his disabilities while a student at FIELDING.

145.   DEFENDANTS FIELDING, VEAZEY, and WILLIAMS also breached their covenant of good faith and fair dealing to PLAINTIFF when they refused to investigate his concerns

about his practicum and instead believed MOREGGI's disparaging statements about PLAINTIFF to the point of terminating him from his degree program entirely.

146.    As a direct and proximate result of DEFENDANTS' breach of obligations, enforceable promises, contract, and statutory regulations, including:

      a.    By wrongfully terminating PLAINTIFF from both his practicum and his program; and

      b.    By failing to investigate his practicum circumstances fairly and diligently,

PLAINTIFF has sustained damages in an amount to be proven at trial.

147.    As a direct and proximate result of DEFENDANTS' breach, PLAINTIFF has had to retain the services of an attorney in this matter, and he therefore seeks reimbursement for reasonable attorneys' fees and costs.

### VIII.

### FOURTH CLAIM FOR RELIEF

### *Defamation*

### (Asserted against DEFENDANT DANIELLE MOREGGI, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)

148.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

149.    In Nevada:

> [a]n action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement . . .; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'

*Clark Cnty. Sch. v. Virtual Ed., 125 Adv. Op. No. 31,* 213 P.3d 496, 12 (Nev. 2009).

150.    In this case, MOREGGI published several false and defamatory statements about PLAINTIFF to FIELDING, specifically, that he had been practicing EMDR without her approval when this was not true, so the first element of *Clark County* is met.

151.    MOREGGI's publication to the third-parties FIELDING and VEAZEY was not subject to absolute or qualified privilege when she spoke because her statements were simply false:

PLAINTIFF was not practicing EMDR without MOREGGI's approval, so the second element of *Clark County* is met.

152. MOREGGI's publication about PLAINTIFF's reputation for honesty was intentionally directed at PLAINTIFF's university; the publications were not made casually or negligently, so the third element of *Clark County* is met.

153. MOREGGI's publications were sufficiently serious to lead to PLAINTIFF's expulsion from FIELDING, so PLAINTIFF's damages here are actual, and the fourth element of *Clark County* has been met.

154. As a direct and proximate result of DEFENDANT MOREGGI's defamation of PLAINTIFF, he has sustained damages in an amount to be proven at trial.

155. As a direct and proximate result of DEFENDANT MOREGGI's defamation of PLAINTIFF, he has had to retain the services of an attorney in this matter, and he therefore seeks reimbursement for reasonable attorneys' fees and costs.

## IX.

## FIFTH CLAIM FOR RELIEF

### *False Light*

**(Asserted against DEFENDANT FIELDING GRADUATE UNIVERSITY, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)**

156. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

157. Nevada:

> like the majority of courts, conclude[s] that a false light cause of action is necessary to fully protect privacy interests, and we now officially recognize false light invasion of privacy as a valid cause of action in connection with the other three privacy causes of action that this court has adopted.

*Franchise Tax Bd. of State v. Hyatt*, 335 P.3d 125, 141 (Nev. 2014).

158. Nevada has adopted the elements of false light from the Restatement. Under the

Restatement, an action for false light arises when:

> [o]ne who gives publicity to a matter concerning another that places the other before the public in a false light ... if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Franchise Tax Bd. of State v. Hyatt*, 335 P.3d 125, 141 (Nev. 2014) (Citing Restatement (Second) of Torts § 652E (1977)).

159.    SADORA has already applied for new Ph.D. programs in psychology at the following schools, listed alphabetically: Drexel University, Pacific University, University of Connecticut, University of Southern Mississippi, and the University of Utah.

160.    In each case, PLAINTIFF was turned away because his academic record from FIELDING states that he was expelled.

161.    Being placed in the false light of having been expelled for merit, when really, one was expelled because they were not properly accommodated under the ADA, would be highly offensive to a reasonable person in that it would tend to imply that the expulsion was legitimate.

162.    FIELDING GRADUATE UNIVERSITY and its agents, successors, and assigns, had knowledge that SADORA had a disability but was never properly accommodated by the school.

163.    FIELDING had this knowledge from multiple sources, including from writings created by and/or sent to WILLIAMS, VEAZEY, and MOREGGI.

164.    When FIELDING published to the new schools where SADORA was applying that he had simply been expelled, that publication was reckless because it disregarded the falsity of the actual circumstances: That SADORA had never been properly accommodated prior to

being expelled.

165. FIELDING's reckless publication therefore placed SADORA into a false light that disregarded the reality of how he had been diagnosed by VEAZEY and MOREGGI, but never accommodated.

166. As a direct and proximate result of DEFENDANT FIELDING GRADUATE UNIVERSITY'S having placed PLAINTIFF into a false light, he has sustained damages in an amount to be proven at trial.

167. As a direct and proximate result of DEFENDANT FIELDING GRADUATE UNIVERSITY'S having placed PLAINTIFF into a false light, he has had to retain the services of an attorney in this matter, and he therefore seeks reimbursement for reasonable attorneys' fees and costs.

## X.

### SIXTH CLAIM FOR RELIEF

#### *Negligence and/or Gross Negligence*

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

168. PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

169. DEFENDANTS owed a legal duty to PLAINTIFF to exercise the reasonable care and ordinary prudence that a reasonably prudent university, university department, professor, and/or program director would demonstrate when acting under the same circumstances, such as when identifying disabled students who need accommodation in order to successfully complete their academic programs.

170. As professional individuals all credentialed in the field of psychology, DEFENDANTS owed a heightened duty to PLAINTIFF to accommodate his disability when they recognized that his disability was impairing the PLAINTIFF's ability to succeed in his degree program and practicum.

171.    DEFENDANT FIELDING's duty is further heightened by the fact that the University gladly accepted federal student loan money on PLAINTIFF's behalf but utterly failed to follow federal law as regards accommodating students with disabilities—all while hosting academic programming primarily in the field of psychology.

172.    DEFENDANT FIELDING and WILLIAMS' breach of said duty to PLAINTIFF constituted Negligent Hiring and Entrustment by WILLIAMS and VEAZEY, plead at greater length *infra*.

173.    All DEFENDANTS breached their duty by failing to exercise the degree of care that was owed to PLAINTIFF, including, but not limited to, by:

    a.   Identifying PLAINTIFF as having disabilities but failing to accommodate him; and

    b.   Failing to accommodate PLAINTIFF because FIELDING had no DRC sufficient to accommodate him, including none in the state of Nevada; and

    c.   Retaliating against PLAINTIFF for his un-accommodated disabilities and for needing accommodations; and

    d.   Abjectly failing—despite being credentialed psychology professionals tasked with understanding mental health and neurological disability—to abide by their obligations under the Americans with Disabilities Act and NRS § 613.330;

    e.   Capriciously characterizing PLAINTIFF's struggles in his practicum as justification for expulsion when DEFENDANTS had made absolutely no effort to reasonably accommodate PLAINTIFF;

    f.   Lying on PLAINTIFF's clinical paperwork that he was working under his own license, not MOREGGI's license;

    g.   Disregarding the truth of PLAINTIFF's situation as by defaming his reputation to his academic program;

    h.   Disregarding the truth of PLAINTIFF's situation as by defaming his reputation to other academic programs to which he has applied.

174.    When engaging in their culpable conduct described herein, all of the DEFENDANTS were not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights of the PLAINTIFF and of their obligations to him.

175.    When engaging in their culpable conduct described herein, all of the DEFENDANTS were grossly negligent because they acted with willful, wanton, and/or reckless disregard of the rights of the PLAINTIFF and of their obligations to him.

176.    DEFENDANTS exhibited a conscious disregard for PLAINTIFF's rights and their obligations to him when they knew the probable harmful consequences of their wrongful acts of failing to accommodate PLAINTIFF would be the expulsion and therefore the injury of the PLAINTIFF that DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

177.    Accordingly, PLAINTIFF is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

178.    As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, the PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

## XI.

### SEVENTH CLAIM FOR RELIEF

*Intentional Infliction of Emotional Distress*

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

179.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

180.    DEFENDANTS acted intentionally to ostracize, defame, fail to accommodate, and expel their student without cause; PLAINTIFF was identified by both VEAZEY and MOREGGI as having disabilities, but he was never accommodated.

181. When PLAINTIFF began to raise concerns about the conditions at his practicum after he had been terminated from it, DEFENDANTS capriciously treated PLAINTIFF as a liability whom they needed to expel from the program as a whole, in gross violation of the ADA and other laws.

182. DEFENDANTS VEAZEY and MOREGGI repeatedly identified PLAINTIFF as having disabilities without any legitimate intention to follow through on helping their student.

183. The actions of DEFENDANTS are extreme, shocking, and outrageous because all the individuals involved here are credentialed psychology professionals tasked with understanding mental health and neurological disability and FIELDING itself is a university that specializes in awarding psychology degrees.

184. Thus, all DEFENDANTS should be able to recognize readily their obligations under various state and federal disability and contract laws, including the Americans with Disabilities Act and NRS § 613.330.

185. Because of the callousness of the DEFENDANTS to follow even basic state and federal disability and contract law—as by expelling a student for being disabled—PLAINTIFF has suffered severe emotional distress in an amount to be proven at trial.

186. The intentional behavior of DEFENDANTS is the direct and proximate cause of PLAINTIFF's ongoing health impairments.

187. In Nevada, "an intentional infliction of emotional distress claim does not require a physical injury . . . " *Sadler v. PacifiCare of Nev., Inc.*, 340 P.3d 1264, 1268 (Nev. 2015).

188. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

189. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

//

//

## XII.

## EIGHTH CLAIM FOR RELIEF

*Unlawful Employment Practice: Discrimination on the Basis of Disability*

**NRS 613.310** *et seq.*
**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

190.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

191.    Nevada employment discrimination law prohibits discrimination on the basis of disability "in any program established to provide apprenticeship or other training" including "without limitation, on-the-job training programs" NRS 613.330(4).

192.    Federal agencies tasked with combating employment discrimination have preliminarily concluded that interns seeking professional certification are covered by the nation's EEO laws.[1]

193.    Courts in the Ninth Circuit have also found that "Because the Ninth Circuit has found that inmates in rehabilitative training programs are protected by Title VII, it is possible that the court of appeals would also find that students in vocational training programs . . . are also protected by Title VII." *Casey v. Central Oregon Inter-Governmental Council*, Civil No. 98-1246-HA, at *1 (D. Or. Dec. 1, 2000).

194.    When PLAINTIFF was completing a practicum at PILV, he was working for the material benefit of professional certification as a Doctor of Psychology.

195.    Thus, when PLAINTIFF was terminated from his practicum site on account of disability, this was not only educational discrimination, but also employment discrimination, in violation of Nevada state and federal EEO law.

196.    Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed

---

[1] "Federal EEO Laws: When Interns May Be Employees." EEOC.GOV. December 8, 2011. Available online at: https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-231.

by law, in an amount to be determined at trial.

197.    As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

**XIII.**

**NINTH CLAIM FOR RELIEF**
*Unlawful Injury or Loss Suffered by a Vulnerable Person,*
**NRS § 41.1395**

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

198.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

199.    PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that he has a mental health impairment that limits one or more of his major life activities, and he has a medical record of that impairment.

200.    PLAINTIFF suffers from depression and anxiety due to his diagnosed disabilities of Attention Deficit Disorder (ADD) and Autism Spectrum Disorder (ASD).

201.    PLAINTIFF's disabilities were known to DEFENDANTS including VEAZEY, who recognized in writing that PLAINTIFF was disabled as when she wrote that PLAINTIFF needed psychotherapy as a condition of his two-semester academic suspension. **Exhibit 9 at 2.**

202.    Kent Dail, director of Clinical Operations at PILV and a subordinate of MOREGGI, also mentioned to PLAINTIFF that he most likely has ADD.

203.    MOREGGI also verbally identified to PLAINTIFF that he had ADD and recognized in writing that PLAINTIFF had communication difficulties.

204.    DEFENDANTS were unjustified in identifying that PLAINTIFF had disabilities but failing to refer him to FIELDING's Disability Resource Center, if, in fact, the University has

one.

205.     Instead, DEFENDANTS simply waited for PLAINTIFF, a vulnerable person under Nevada law, to fail in his costly studies and practicum, whereupon, they expelled him.

206.     This unjustifiable behavior by DEFENDANTS inflicted injury, pain, and anguish on PLAINTIFF.

207.     Accordingly, PLAINTIFF is entitled to recover two times his damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

208.     If it is established by a preponderance of the evidence that DEFENDANTS are liable because they acted with recklessness, oppression, fraud, and/or malice, PLAINTIFF is entitled to attorneys' fees and costs. NRS § 41.1395(2).


## —FEDERAL CLAIMS—

## XIV.

## TENTH CLAIM FOR RELIEF

### Unlawful Discrimination, Harassment, and Retaliation Based on Disability at a Place of Public Accommodation

### Title III of the Americans with Disabilities Act and Amendments Act, 42 U.S.C. §§ 12181 *et seq*. & Section 504 of the Rehabilitation Act of 1973, 34 C.F.R. § 104.41 *et seq.*

### (Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)

209.     PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

210.     FIELDING UNIVERSITY is subject to Title III of the ADA, the Title on public accommodations, since it is a "postgraduate private school, or other place of education" as defined by 42 U.S.C. § 12181(7)(J).

211.     PLAINTIFF was a student at FIELDING UNIVERSITY, a postgraduate private school.

212.     PLAINTIFF is disabled in that he has a physical and mental impairment that substantially limits one or more major life activities and PLAINTIFF is also regarded as being disabled as

defined by 42 U.S.C. § 12102(1)(A-C).

213.    Under the 2008 ADA Amendments, the "regarded as" prong was expanded to include disabilities that do not impair major life activities. Congress wrote:

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12101(3)(A-B).

214.    While attending FIELDING, PLAINTIFF was subject to discrimination on the basis of disability by Defendants WILLIAMS and VEAZEY, who acted as agents of the UNIVERSITY.

215.    This discrimination took several forms, including denial of participation in violation of 42 U.S.C. § 12182(b)(1)(A)(i).

216.    This discrimination included being identified as an individual with disabilities by VEAZEY, MOREGGI, and others without being referred to FIELDING's Disability Resource Center for accommodations, if, in fact, the UNIVERSITY has one.

217.    This discrimination included being expelled by WILLIAMS for reasons stemming from PLAINTIFF's disabilities without being referred to FIELDING's Disability Resource Center for accommodations, if, in fact, the UNIVERSITY has one.

218.    Under 42 U.S.C. § 12188(a)(1), PLAINTIFF was not required to engage in the futile gesture of requesting that the place of public accommodation stop discriminating against him since he had actual notice that FIELDING UNIVERSITY, WILLIAMS, & VEAZEY did not intend to comply with the provisions of this Title.

219.    PLAINTIFF was expelled from both his academic program and his practicum on the basis of his disabilities, in violation of federal law.

220.    This unjustifiable behavior by DEFENDANTS damaged the PLAINTIFF.

221.     Accordingly, PLAINTIFF is entitled to injunctive relief, damages, and attorneys' fees and costs.

## XV.

### ELEVENTH CLAIM FOR RELIEF

***Unlawful Discrimination, Harassment, and Retaliation Based on Disability at a Place of Employment***

**Title I of the Americans with Disabilities Act and Amendments Act, 42 U.S.C. §§ 12111 *et seq*. & Section 504 of the Rehabilitation Act of 1973, 34 C.F.R. § 104.41 *et seq.***

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

222.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

223.    FIELDING UNIVERSITY is subject to Title I of the ADA, the Title on employment, since it is a "covered entity" as defined by 42 U.S.C. § 12111(2).

224.    DANEILLE MOREGGI is subject to Title I of the ADA since she is an "employer" as defined by 42 U.S.C. § 12111(5)(A).

225.    PLAINTIFF is a "qualified individual" as defined by 42 U.S.C. § 12111(8); he is an individual with a disability who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

226.    PLAINTIFF is disabled in that he has a physical and mental impairment that substantially limits one or more major life activities and PLAINTIFF is also regarded as being disabled as defined by 42 U.S.C. § 12102(1)(A-C).

227.    Under the 2008 ADA Amendments, the "regarded as" prong was expanded to include disabilities that do not impair major life activities. Congress wrote:

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12101(3)(A-B).

228.    Federal agencies tasked with combating employment discrimination have preliminarily concluded that interns seeking professional certification are covered by the nation's EEO laws.[2]

229.    Courts in the Ninth Circuit have also found that "Because the Ninth Circuit has found that inmates in rehabilitative training programs are protected by Title VII, it is possible that the court of appeals would also find that students in vocational training programs . . . are also protected by Title VII." *Casey v. Central Oregon Inter-Governmental Council*, Civil No. 98-1246-HA, at *1 (D. Or. Dec. 1, 2000).

230.    When PLAINTIFF was completing a practicum at PILV, he was working for the material benefit of professional certification as a Doctor of Psychology at FIELDING GRADUATE UNIVERSITY.

231.    Thus, when PLAINTIFF was terminated from his practicum site on account of disability, this was not only educational discrimination, but also employment discrimination, in violation of Nevada state and federal EEO law.

232.    Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12112(a), "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

233.    As is codified at 42 U.S.C. § 12112(b), "the term 'discriminate against a qualified

---

[2] "Federal EEO Laws: When Interns May Be Employees." EEOC.GOV. December 8, 2011. Available online at: https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-231.

individual on the basis of disability'" by a covered entity includes:

    a. "[P]articipating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, *or an organization providing training and apprenticeship programs*)" 42 U.S.C. § 12112(b)(2) (Emphasis added);

    b. "[U]tilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability; or that perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. § 12112(3)(A-B);

    c. [E]xcluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association 42 U.S.C. § 12112(4); and

    d. [N]ot making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . 42 U.S.C. § 12112(5)(A).

234.    PLAINTIFF completed his practicum work under DANIELLE MOREGGI as a condition of his academic program at FIELDING UNIVERSITY.

235.    PLAINTIFF was repeatedly identified by both MOREGGI and his supervisors at FIELDING as having disabilities that impaired his academic and practicum work, but he was never referred to the UNIVERSITY'S Disability Resource Center for accommodations, if, in fact, it even has one.

236.    PLAINTIFF was fired from his practicum before being accommodated.

237.    Thus, ALL DEFENDANTS breached their obligations under the statute to engage in the interactive process regarding PLAINTIFF's disability that they had all readily identified.

238.    Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

239.    As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

240.    PLAINTIFF seeks a permanent injunction requiring DEFENDANTS to comply with the ADA in the future by ensuring that future FIELDING students are not discriminated against in their academic programs and practicums.

241.    PLAINTIFF seeks a declaration that DEFENDANTS violated his rights under the ADA.

242.    As a direct and proximate result of DEFENDANTS' intentional discrimination against him, PLAINTIFF sustained damages entitling him to equitable relief, as allowed by law, according to proof at trial.

243.    As a further, direct, and proximate result of DEFENDANTS' intentional discrimination against him, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks reasonable attorneys' fees and costs, including under 42 U.S.C. § 12205 and 36 C.F.R §36.505.

## XVI.

### TWELFTH CLAIM FOR RELIEF

### *Unlawful Discrimination Based on Sex*

### Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

### (Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)

244.    PLAINTIFF incorporates by reference all other allegations of this *Complaint*, as though fully set forth herein.

245.   FIELDING GRADUATE UNIVERSITY is an educational institution as defined by 20 U.S.C. § 1681(c).

246.   The U.S. Supreme Court has recognized an implied private right of action for both Title IX and Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

247.   In 1992, the Supreme Court ruled that private plaintiffs could seek monetary damages against a school under Title IX for intentional discrimination against a student by a teacher. *See Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

248.   With the exception of the entity FIELDING UNIVERSITY, all the Defendants sued herein are women.

249.   As of Fall 2023, only 20% of the students studying at FIELDING UNIVERSITY are men. **Exhibit 10.**

250.   Thus, PLAINTIFF was in a demographic minority at FIELDING merely on the basis of his sex.

251.   PLAINTIFF is not only a man but is also associated with a "masculine" job field in that he is a former military service member who wishes to provide psychotherapy to other military service members.

252.   MOREGGI and most of the women who work at her practicum identify as politically liberal lesbians.

253.   Thus, PLAINTIFF stood out in this environment both because of his sex, including his straight sexual orientation, and his association with the masculine and more politically conservative military.

254.   Defendants VEAZEY and MOREGGI were familiar with PLAINTIFF's association with the military; MOREGGI in particular had criticized PLAINTIFF for asking her staff to complete a voluntary evaluation of the PLAINTIFF for his military team leader.

255.   PLAINTIFF's "re-entry" interview conducted on or around June 29, 2023 was conducted by Drs. Elaine Hanson and April Harris-Britt, both women.

256.    Dr. Harris-Britt is African-American.

257.    On or around November 10, 2021, SADORA had previously reached out to Dr. Harris-Britt regarding a personal matter involving his difficulties in his marriage to his ex-wife, who is African American; these difficulties included racial hostility directed at PLAINTIFF by his wife following the national events of the Black Lives Matter movement.

258.    Dr. Harris-Britt therefore had been made aware that the PLAINTIFF had marital difficulties and had the opportunity to profile him as a "bad husband" to a wife of color.

259.    Thus, Dr. Harris-Britt had at least two conflicts of interest upon conducting the "re-entry" interview of PLAINTIFF—sex and race—and should not have participated.

260.    FIELDING violated PLAINTIFF'S rights under Title IX by allowing Dr. Harris-Britt to evaluate PLAINTIFF for termination from the program regardless of her prior conflicts of interest as regards the PLAINTIFF.

261.    FIELDING violated PLAINTIFF'S rights under Title IX by allowing all the termination decisions regarding PLAINTIFF, including at the practicum overseen by MOREGGI, to be made by women.

262.    PLAINTIFF seeks a declaration that DEFENDANTS violated his rights under Title IX.

263.    As a direct and proximate result of DEFENDANTS' intentional discrimination against him, PLAINTIFF sustained damages entitling him to money damages as allowed by law.

264.    As a further, direct, and proximate result of DEFENDANTS' intentional discrimination against him, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks reasonable attorneys' fees and costs.

//

//

//

//

//

//

*—THEORIES OF LIABILITY APPLICABLE TO ALL CLAIMS—*

**XVII.**

*Respondeat Superior Liability*[3]

*Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment*

**(Asserted against Defendants FIELDING GRADUATE UNIVERSITY, WENDI WILLIAMS, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)**

265. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

266. At all relevant times herein, employees DOE INDIVIDUALS 4-50, and each of them, were under the control of their respective employers, including DEFENDANTS FIELDING GRADUATE UNIVERSITY, WILLIAMS, and DOE BUSINESS ENTITIES 2-10.

267. At all relevant times herein, the acts of employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating the law, as alleged herein.

268. At all relevant times herein, the culpable and injurious acts of employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, complained of herein, occurred when they were under the control of their respective employers, Defendants FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and such acts by these employees occurred within the course and scope of their employment.

269. Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *Respondeat Superior* to impose vicarious liability on FIELDING, WILLIAMS, and DOE BUSINESS

---

[3] *Respondeat superior* is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See *Fernandez v. Penske Truck Leasing Co., L.P.* 2021 WL 1832571, 1 (D. Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to Defendants FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, vicariously, for the acts of their employees, including but not limited to VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50.

ENTITIES 2-10, as respective employers/contracting supervisors of VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50 and each of them, for the culpable conduct of these employees/contractors occurring within the course and scope of their employment/contract.

## XVIII.

### Negligent Hiring and Entrustment[4]

### Vicarious Liability of Employers for Hiring Bad Employees and Entrusting Sensitive Tasks to Employees not Able to Carry Them Out

### (Asserted against Defendants FIELDING GRADUATE UNIVERSITY, WENDI WILLIAMS, DOE BUSINESS ENTITIES 2-10, and DOE INDIVIDUALS 4-50)

270.   PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

271.   DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10 had a duty to PLAINTIFF to use reasonable care in the training and supervision of their employees/contractors to ensure that they were fit for their positions, including by training employees/contractors to discern the difference between profiling on the basis of disability and providing meaningful, individualized, reasonable accommodation.

272.   DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10 had a duty to PLAINTIFF to train their employees/contractors regarding, but not limited to:

   a.   Recognizing and understanding when identified disability in a student prompts the need for the interactive process under the Americans with Disabilities Act;

---

[4] Negligent hiring and entrustment are not properly causes of action or claims for relief, but rather, methods of assigning liability to an employer for the conduct of its employees. To state a claim for negligent training and supervision in Nevada, the Plaintiff must show "(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v, Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) citing *Reece v. Republic Services, Inc.,* 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011). Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee—who it knows or should have known behaves wrongfully—in a position in which the employee can harm someone else. *Id.* citing *Daisley v. Riggs Bank, N.A.,* 372 F.Supp.2d 61, 79 (D.D.C.2005).

    b.   Recognizing and understanding when a referral to the university's Disability Resource Center must be made;

    c.   Recognizing and understanding the consequences of allowing a student with identified disabilities to persist in their course of study without reasonable accommodation;

    d.   Recognizing and understanding what constitutes retaliation on the basis of disability;

    e.   Recognizing and understanding the difference between genuine academic failure and the symptoms of unaccommodated disability;

    f.   Recognizing and understanding what educational and workplace defamation is and how to avoid it;

    g.   Recognizing when a student's academic struggling needs to be investigated more closely, especially if disability has been identified;

    h.   Complying with all state and federal laws, including as regards anti-discrimination.

273.    On information and belief, at all times relevant hereto, DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10 through its officers, managers, supervisors, agents, and/or employees, was responsible for training, supervising, and retaining employees, including training and supervision pertaining to employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them.

274.    On information and belief, at all times relevant hereto, DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10 through its officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees/contractors, including VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, to make sure that their employees/contractors are fit for their positions and to prevent harm to third parties, including PLAINTIFF, by the employees'/contractors' tortious or wrongful conduct,

of the type alleged herein.

275.   On information and belief, at all times relevant hereto, DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, through its officers, managers, supervisors, agents, and/or employees breached this duty of care when they placed and retained employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, in their positions as academic/practicum supervisors without properly training them, whom they knew or should have known would fail to properly perform their duties, and that in the position in which they were placed and retained, employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, could harm someone innocent, including PLAINTIFF, as alleged herein.

276.   On information and belief, DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, through its officers, managers, supervisors, agents, and/or employees/contractors were negligent in the training, supervision and retention of employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, including but not limited to training in the areas of: disability law, anti-discrimination law, and defamation, the lack of training in which caused the harm and injuries to PLAINTIFF, as alleged herein.

277.   When engaging in their culpable conduct described herein, DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and each of them, acted with malice, express or implied, in that DEFENDANTS engaged in despicable conduct by virtue of the egregious nature of their failures to properly train, supervise, and retain the individuals responsible for protecting the rights of PLAINTIFF, and these DEFENDANTS had a conscious disregard of the rights of PLAINTIFF and of vulnerable persons similarly situated to PLAINTIFF.

278.   DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and each of them, exhibited a conscious disregard of PLAINTIFF's rights and/or safety when they knew of the probably harmful consequences of their wrongful acts of neglecting to

properly train, supervise, and retain employees employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, the probable harmful consequences of which included physical and mental injury as well as the violation of PLAINTIFF's rights that DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

279.    DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and each of them, breached their duty to PLAINTIFF when they allowed employees/contractors VEAZEY, MOREGGI, and DOE INDIVIDUALS 4-50, and each of them, to take adverse action against PLAINTIFF on the basis of profiling bias that targeted PLAINTIFF because of his disability.

280.    The hostile and capricious actions of DEFENDANTS' employees/contractors directly and proximately caused injury to PLAINTIFF.

281.    DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and each of them, should have known better than to entrust interaction with disabled students to employees/contractors who were liable to treat those students as a threat simply by virtue of their disabilities.

282.    The incompetence of DEFENDANTS' negligently-hired and poorly-trained employees/contractors was both the direct and proximate cause of PLAINTIFF's injuries.

283.    PLAINTIFF has sustained damage including but not limited to: damage to his academic and professional reputation, inability to be admitted to a new academic program, embarrassment in front of new programs, lost income, profiling of him for having a disability that is protected by the ADA and Nevada state law, and capricious exclusion from both an academic program and a practicum site where he was never properly accommodated despite being repeatedly identified by psychology professionals as having a disability.

284.    Accordingly, PLAINTIFF is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

285.    As a further result of the culpable conduct by DEFENDANTS, as alleged in this cause

of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

## —REMEDIES COMMON TO ALL CLAIMS—

### XIX.

### *Declaratory Relief*

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

286.   PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

287.   Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in his favor, to declare his rights and obligations of the DEFENDANTS sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

288.   This includes declaratory relief whereby the Court issues a declaration that DEFENDANTS unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF's rights under the law, and any other declaration the Court finds necessary and proper.

### XX.

### *Injunctive Relief*

**(Asserted against ALL DEFENDANTS, including all DOE DEFENDANTS)**

289.   PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

290.   Based on the foregoing, PLAINTIFF has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

291.   PLAINTIFF is entitled to injunctive relief, which would include expunging PLAINTIFF's academic record and providing only a neutral reference regarding his prior

academic work at FIELDING GRADUATE UNIVERSITY.

292.    Considering the balance of hardships between PLAINTIFF and DEFENDANTS, a remedy in equity is warranted and the public interest will be served by issuance of such injunctive relief.

293.    Pursuant to NRS 33.010 *et seq.*, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF is entitled to have injunctive relief awarded in his favor, including by restraining the acts complained of and compelling the obligations of the DEFENDANTS sued herein to give effect to the declaratory and other relief awarded by the Court in this action.

294.    One form of injunctive relief could be to allow PLAINTIFF to finish his degree with reasonable accommodation.

295.    Another form of injunctive relief, in the alternative, would be to provide PLAINTIFF with an entirely neutral reference that would allow him to finish his course of study at another university.

296.    Such injunctive relief is necessary and proper to the resolution of the disputes raised herein, including as specifically prayed for below, and any other declarations and equitable relief that the Court deems necessary and proper.

## XXI.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, as follows:

1. For general damages in an amount in excess of $100,000.00;

2. For special damages in an amount in excess of $100,000.00;

3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct,

described herein, in an amount in excess of $100,000.00;

4. For punitive and exemplary damages;

5. For costs of the suit incurred herein;

6. For attorneys' fees, costs and prejudgment interest;

7. For injunctive relief;

8. For declaratory relief, in the form of declarations that:

      (A) PLAINTIFF was discriminated against and wrongly terminated from his academic program in violation of both state and federal law.

      (B) PLAINTIFF's current medical damages are the direct and proximate result of the conduct of DEFENDANTS FIELDING, WILLIAMS, and DOE BUSINESS ENTITIES 2-10, and each of them.

Dated this 9th Day of July, 2024.


The Law Offices of Robert S. Melcic

/s/ Robert S. Melcic
ROBERT S. MELCIC, ESQ.
Nevada Bar No. 14923
3315 E. Russell Rd.
Ste. A4-271
Las Vegas, NV 89120
Phone: (702) 526-4235
Attorney's Email: robertmelcic@gmail.com
Clerk's Email: rsmlawclerk@gmail.com
*Attorney for Jason Sadora*